UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-62106-CIV-COHN/SELTZER

CONSENT CASE

JUAREZ GABRIEL DASILVA,

    Plaintiff,

vs.

AL LAMBERTI, in his official capacity as
BROWARD COUNTY SHERIFF and
DEPUTY SHERIFF SCOTT BURES,
individually,

    Defendants.
_____/

ORDER ON MOTION TO COMPEL

THIS CAUSE is before the Court on Defendants' Motion to Compel Responses to Discovery and Answers to Deposition Questions Regarding Immigration Status (DE 21) and the Court being sufficiently advised, it is hereby ORDERED that the Motion is DENIED for the reasons set forth below.

BACKGROUND

Plaintiff Juarez Gabriel DaSilva brings this action under 42 U.S.C. § 1983 against Al Lamberti, in his official capacity as Broward County Sheriff, and against Deputy Sheriff Scott Bures, in his individual capacity, alleging violations of his Fourth Amendment rights.[1] More specifically, DaSilva alleges that Deputy Bures unlawfully arrested him without

---

[1] In addition to federal civil rights claims, the Complaint also asserts state law claims for assault and battery.

probable cause and used excessive force in effectuating the arrest.

Plaintiff's Complaint (DE 1) alleges that on August 27, 2007, DaSilva (who is a dark-skinned Latin male) was sitting on a motorcycle parked in an enclosed front porch of his residence while talking to a friend on his cell phone. Two sheriff's deputies, one of whom was Bures, approached DaSilva's front porch; Deputy Bures had with him a barking, leashed K-9 police dog. A police helicopter hovered overhead. The sheriff's deputies were in the vicinity looking for a black male suspected of rape. They instructed DaSilva to come outside, and DaSilva immediately complied with their instruction. At the time, DaSilva was wearing only shorts; he did not have on a shirt or shoes, and he was not carrying any weapon. After emerging from the porch, DaSilva (allegedly) remained perfectly still. Deputy Bures then (allegedly) lengthened the leash on his K-9 and began walking closer to DaSilva.

According to the Complaint, less than one minute later, without notice or any warning, the K-9 (while still on the leash) attacked DaSilva, puncturing and lacerating his penis and left arm; the attack lasted several minutes. DaSilva fell to the ground and tried to shield himself from the attack. He (allegedly) did not attempt to stop the attack or otherwise resist, nor did he attempt to escape or flee the scene. The Complaint further alleges that only after several other deputies had arrived did Deputy Bures instruct the K-9 to release DaSilva, at which time another deputy handcuffed him. At that time, another deputy (not Bures) for the first time asked DaSilva to identify himself and began questioning him. When the deputies realized that DaSilva was not the suspect for whom they were searching, they released him from the handcuffs.

2

The Complaint additionally alleges that DaSilva was transferred from the scene to a hospital where he spent the entire day being examined and treated; he was given a tetanus shot and was prescribed antibiotics and pain medication.  Two days later, DaSilva returned to the hospital in severe pain and with a badly swollen arm.  He was admitted and spent two days in the hospital undergoing treatment.  According to the Complaint, DaSilva continues to experience pain in his penis and arm, and he has limited strength in his arm and permanent scarring.  For these violations of his constitutional rights, DaSilva seeks unspecified "compensatory damages," as well as costs and attorney's fees.

Defendants have denied the material allegations of the Complaint.  And as one of their Affirmative Defenses, they assert that Deputy Bures is immune from suit under the doctrine of qualified immunity (Affirmative Defense 4, DE 2).

## MOTION TO COMPEL

During the course of discovery, Defendants took DaSilva's deposition.  DaSilva testified that in 2005, he flew from his native country, Brazil, to Mexico, and then entered into the United States with the help of others.  According to DaSilva, he came to the United States to work and support his family.  DaSilva testified that he is employed as a brick layer; he is paid in cash, and he does not have a social security card or driver's license. DaSilva, however, declined to answer when asked whether he is in the United States legally or whether he possesses a "green card."

Subsequently, Defendants propounded a Second Request to Produce (DE 21-3), requesting that DaSilva produce a copy of his current passport and all his immigration records.  DaSilva objected to both Requests as harassing and irrelevant.  Notwithstanding

his objections, DaSilva produced a copy of his passport (DE 21-4); it, however, did not include any port of entry stamps.  With respect to his immigration records, DaSilva responded "none at this time."  Responses to Request to Produce (DE 21-3).  Defendants now move the Court to compel Plaintiff to provide information as to his immigration status in a continued deposition and by supplemental responses to their discovery request, to include the omitted portions of his Brazilian passport.

DaSilva opposes the Motion, arguing that his immigration status is not relevant to any claims or defenses herein, nor is the discovery sought reasonably calculated to lead to the discovery of admissible evidence.  He argues that a plaintiff's immigration status should not be discoverable "because the *in terrarium* effect of inquiring into a party's immigration status and authorization to work in this country presents a danger of intimidation [that] would inhibit plaintiffs in pursuing their rights."  Opposition Memorandum at 6 (DE 24).  See Topo Dhir, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) ("It is entirely likely that any undocumented [litigant] forced to produce documents related to his or her immigration status will withdraw from suit rather than produce such documents and face . . . potential deportation.") (quoting Flores v. Albertsons, Inc., No. CV0100515AHM(SHX), 2002 WL 1163263, at *6 (C.D. Cal. Apr. 9, 2002)); Liu v. Donna Karan Int'l, Inc., 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (finding that a plaintiff's immigration status not relevant to FLSA claim; "even if such discovery were relevant . . . the risk of injury outweighs the need for its disclosure. . . . [T]he danger of intimidation [and] the danger of destroying the cause of action . . . would inhibit plaintiffs in pursuing their rights.") (citation and quotation marks omitted).

4

Defendants contend that DaSilva's immigration status is relevant to two issues – DaSilva's damages and Deputy Bures' qualified immunity defense.

<u>Relevancy to DaSilva's Damages</u>

Defendants first argue that DaSilva's immigration status is relevant to his damages claim because he has pled unspecified damages and has alleged that he lost seven months' employment. According to Defendants, "if Plaintiff is in this country illegally, and pays no taxes, his employment is illegal." Motion at 8 (DE 21). Defendants, therefore, argue that they are entitled to discover whether Plaintiff is entitled to damages for lost income.

DaSilva responds that he has not pled lost wages as an element of his damages. Additionally, DaSilva represents that he will not seek damages for lost wages. DaSilva, therefore, argues that his immigration status is not relevant to the issue of damages. Defendants accept (as a stipulated fact) DaSilva's representation that he will not seek lost wages, as does this Court.

In their Reply Memorandum (DE 25), however, Defendants for the first time argue that DaSilva's immigration status is relevant to any claim he may make for recovery of past and future medical expenses. Yet, Local Rule 7.1.C provides that a reply memorandum "shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law. No further or additional memoranda of law shall be filed without prior leave of Court." S.D. Fla. L.R. 7.1.C. In their Motion, Defendants had argued that DaSilva's immigration status is relevant to his damages claim, but they limited their argument to lost wages. Faced with

5

DaSilva's disclaimer of lost wages, Defendants now reply with a new argument based on the (alleged) relevancy of DaSilva's immigration status to any claim for medical expenses that he may seek. DaSilva has not had an opportunity to respond to this new argument. Accordingly, pursuant to Local Rule 7.1.C, the Court will not consider this issue. See Thompkins v. Lil' Joe Records, Inc., No. 02-61161-Civ, 2008 WL 896898, at *11 (S.D. Fla. Mar. 31,2008) (Moreno, J.) (relying on Local Rule 7.1.C, court rejected as procedurally barred argument raised for first time in reply memorandum); Flamenbaum v. Orient Lines, Inc., No. 03-22549-Civ, 2004 WL 1773207, at *14 (S.D. Fla. July 20, 2004) (Altonaga, J.) (court declined to consider new argument raised for first time in reply memorandum, noting that the defendant had not had opportunity to respond); Fromm-Vane v. Lawnwood Med. Ctr., Inc., 995 F. Supp. 1471, 1475 (S.D. Fla. 1997) (Moore, J.) (relying on Local Rule 7.1.C, court refused to consider new argument raised for first time in reply memorandum); Martinez v. Weyerhaeuser Mortgage Co., 959 F. Supp. 1511, 1515-16 (S.D. Fla. 1996) (Ryskamp, J.) (pursuant to Local Rule 7.1.C., court struck portion of reply memorandum that raised new issues).

Furthermore, even were the Court to consider Defendants' new argument, it would not grant the Motion on that basis. With respect to their argument regarding DaSilva's past medical expenses, Defendants merely contend that "the actual costs vary dependent on whether the Plaintiff is entitled to medical care at governmental rates, as he would if in the Country legally." Reply Memorandum at 3 (DE 25). Yet, they have not cited any authority to support this contention. And with respect to DaSilva's future medical expenses (if any), Defendants merely contend that they "are entitled to sufficient information to argue

6

the difference in cost between the care provided in Brazil and that in the United States." Id. This argument presupposes that if DaSilva were in the United States illegally, he would automatically be deported to Brazil and be treated in that country for any future medical problems. And Defendants have not proffered any authority in support.

### Relevancy to Qualified Immunity Defense

Defendant next argues that Plaintiff's immigration status is relevant to Deputy Bures' qualified immunity defense. In Saucier v. Katz, 553 U.S. 194, 201 (2001), receded from by Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808 (2009), the United States Supreme Court set forth a two-part test for analyzing a qualified immunity defense. The threshold inquiry is whether the facts, considered in the light most favorable to the plaintiff, demonstrate that "the officer's conduct violated a constitutional right." Id. If the court finds a constitutional violation, then "the next, sequential step is to ask whether the right was clearly established."[2] Id.

In the instant case, DaSilva alleges a violation of his Fourth Amendment rights. Under the Fourth Amendment, an individual has the right to be free from arrest unless the

---

[2] In Pearson, the Supreme Court recently reaffirmed the standard for determining whether a defendant is entitled to qualified immunity. ("[A] court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.") (internal citation omitted). Pearson, however, held that federal courts are no longer obligated to first address the "constitutional right" prong and then address the "clearly established" prong as required by Saucier; rather, the courts may now decide which prong of the inquiry to address first. 129 S.Ct. at 818.

arrest is justified by probable cause.[3] Motes v. Myers, 810 F.2d 1055, 1059 (11th Cir. 1997). "Probable cause for an arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) (quoting United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir.1992)); see also McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (probable cause exists when an arrest is "objectively reasonable based on the

---

[3] "For purposes of Fourth Amendment analysis, there are 'three broad categories of police-citizen encounters': '(1) police citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full scale arrests.'" Wright v. Burkhead, No. 6:07-cv-2039-Orl-19KRS, 2009 WL 1393507, at *6 (M.D. Fla. May 18, 2009) (quoting United States v. Perez, 443 F.rd 772, 777 (11th Cir. 2006)). The Eleventh Circuit has explained:

> The first category of consensual encounters does not implicate fourth amendment scrutiny. The second category involves reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave. In order to justify such a fourth amendment "seizure," the government must show a reasonable, articulable suspicion that the person has committed or is about to commit a crime. Finally, when the totality of circumstances indicate that an encounter has become too intrusive to be classified as a brief seizure, the encounter is an arrest and probable cause is required.

U.S. v. Espinosa-Guerra, 805 F.2d 1502, 1506 (11th Cir.1986) (internal citations omitted).

From the allegations of DaSilva's Complaint, it appears that the second category of encounter may be implicated here. If so, for the detention to be justified, Deputy Bures must have had an objectively "reasonable, articulable" suspicion that DaSilva had committed or was about to commit a crime. See id. Because Defendants have premised their argument (as to the relevancy of DaSilva's immigration status) on probable or arguable probable cause to arrest, the Court will likewise limit its analysis for purposes of the instant Motion.

totality of circumstances"); Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002) (probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.").

Even where a law enforcement officer lacked probable cause to make an arrest, the officer may still be entitled to qualified immunity if he had "arguable probable cause" to make the arrest. See Eslinger, 555 F.3d at 1327 ("If a constitutional violation occurred because the officer lacked probable cause, we next consider whether arguable probable cause existed."); Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004) ("Qualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist."). "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" Eslinger, 555 F.3d at 1327 (quoting Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir.2001)) (emphasis added); see also Durruthy v. Pastor, 351 F.3d 1080, 1089 (11th Cir. 2003) ("Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.") (internal marks and citation omitted).

Moreover, in Ferraro, the Eleventh Circuit instructed that "'the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.'" 284 F.3d at 1195-96 (quoting Bailey v. Bd. of County Comm'rs of Alachua County Florida, 956 F.2d

1112, 1119 n.4) (holding that arrest for bribery, unlawful compensation, and unlawful possession of money in jail was proper even though arrest report reflected only conveying tools into jail to aid escape, for which defendant was not charged).  "Indeed, '[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.'" Id. at 1196 (quoting United States v. Saunders, 476 F.2d 5, 7 (5th Cir. 1973)) (holding that arrest based on marijuana possession was valid even though agents making arrest relied only on charges of harboring and concealing a fugitive, for which there was no probable cause); see also Whittington v. Town of Surfside, 490 F. Supp. 2d 1239, 1251 (S.D. Fla. 2007) (Gold, J.) ("[S]o long as probable cause existed to arrest [the plaintiff] for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges." (citing Ferraro, 284 F.3d at 1196) (emphasis added); Epstein v. Toys-R-Us Delaware, Inc., 277 F. Supp. 2d 1266, 1274 (S.D. Fla. 2003) (Graham, J.) ("[E]ven if the officers were mistaken about whether there was probable cause for the charge of disorderly conduct, in the Eleventh Circuit an arrest made for an incorrect charge is not illegal if the officer had probable cause to arrest for an independent charge.").

According to Defendants, even if the Court finds that probable cause or arguable probable cause did not exist for the violation for which DaSilva was detained or arrested, Deputy Bures is still entitled to qualified immunity if he can show probable cause (or arguable probable cause) for an arrest on immigration violations.  More specifically,

Defendants argue that if DaSilva is illegally in the United States, he may have been subject to arrest for violation of 8 U.S.C. § 1325, which provides: "Any an alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officials or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading misrepresentation of the willful concealment of a material fact" is subject to a fine and/or imprisonment of six months for a first offense and a fine and/or not more than two years imprisonment for a subsequent offense.  8 U.S.C. § 1325.  Defendants, therefore, argue that they are entitled to discover DaSilva's immigration status.

Defendants' argument, however, is without merit.  Whether Deputy Bures is entitled to qualified immunity does not depend on whether or not DaSilva is, in fact, in the United States illegally.  Rather, in making a qualified immunity analysis, the Court must determine whether Deputy Bures had probable cause or arguable probable cause to detain or arrest DaSilva, which turns on whether <u>Deputy Bures</u> had a reasonable, objective belief (under the circumstances then presented) that DaSilva had committed or was committing a crime (actual probable cause) or whether <u>reasonable law enforcement officers</u> in the same circumstances and <u>possessing the same knowledge as Deputy Bures</u> could have believed that probable cause existed to arrest (arguable probable cause).  Accordingly, the Court does not find that DaSilva's actual immigration status is relevant to Deputy Bures' qualified immunity defense.

Based on the foregoing, the Court will not compel DaSilva to provide the requested information as to his immigration status – either through deposition testimony or discovery

responses. Accordingly, Defendants' Motion to Compel Responses to Discovery and Answers to Deposition Questions Regarding Immigration Status (DE 21) is DENIED.

DONE AND ORDERED in Fort Lauderdale, Florida, this 29th day of October 2009.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record