UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-62106-CIV-COHN/SELTZER

CONSENT CASE

JUAREZ GABRIEL DASILVA,

    Plaintiff,

vs.

AL LAMBERTI, in his official capacity
as BROWARD COUNTY SHERIFF,
and DEPUTY SHERIFF SCOTT BURES,
individually,

    Defendants.
_____/

### ORDER GRANTING DEFENDANT BURES' *ORE TENUS* MOTION TO DISMISS

THIS CAUSE is before the Court on the Defendant Deputy Sheriff Scott Bures' Motion to Dismiss, made in open court following the jury's verdict. After considering the record, the verdict, and the applicable law, it is hereby ORDERED that the Motion is GRANTED for the reasons set forth below.[1]

### PRETRIAL PROCEEDINGS

Plaintiff Juarez Gabriel DaSilva ("DaSilva"), brought this action against Sheriff Al Lamberti, in his official capacity ("BSO"), and Deputy Sheriff Scott Bures ("Deputy Bures"), in his individual capacity. The case arose out of an incident in which Deputy Bures' police canine bit DaSilva. The Complaint asserted federal constitutional claims under 42 U.S.C. § 1983 against BSO and Deputy Bures (Counts I and II) for an arrest

---

[1] The Motion was granted in open court on January 13, 2010; this Order is to provide the Court's reasoning.

without probable cause and for the use of excessive force in effectuating the arrest, in violation of the Fourth Amendment, as well as state law claims for assault against BSO and Deputy Bures (Counts III and IV), for battery against BSO and Deputy Bures (Counts V and VI), and for false arrest against BSO and Deputy Bures (Counts VII and VIII).

Defendants moved for summary judgment on all claims (DE 34). After the issues were briefed by the parties, this Court granted summary judgment in favor of Defendants on the Fourth Amendment claim against BSO (Count I) and the Fourth Amendment claim against Deputy Bures (Count II) but only to the extent it alleged lack of probable cause to arrest. The Court additionally granted summary judgment in favor of both Defendants on the state false arrest claims (Counts VII and VIII).

In considering whether Deputy Bures was entitled to qualified immunity on the excessive force portion of the Fourth Amendment claim (Count II), the Court found that the parties' differing versions of the events surrounding DaSilva's arrest raised genuine issues of material fact precluding summary judgment. More specifically, the court found that if the jury credited DaSilva's version of the events – Deputy Bures unleashed the canine without warning when DaSilva had complied with his commands, when he did not appear to have any weapons, when he was not threatening Deputy Bures, and when he made no attempt to flee – then the jury could conclude that Deputy Bures had used excessive force.[2]

---

[2] The Court's reasoning is fully set out in the Order on the Defendants' Motion for Summary Judgment (DE 45).

The case proceeded to trial only on the portion of the Fourth Amendment excessive force claim against Deputy Bures (Count II) and the assault and battery claims against BSO and Deputy Bures (Counts III, IV, V, and VI).

## TRIAL PROCEEDINGS

Trial commenced on January 11, 2010. DaSilva rested the following day, and the court deferred hearing the Defendants' Rule 50 motions until they had concluded their case, which occurred the following day.

At the close of evidence, Defendants moved for judgment as a matter of law on the assault claims (Counts III and IV), and the Court granted that motion. Therefore, the only issues sent to the jury were the excessive force portion of the Fourth Amendment claim against Deputy Bures and the state law battery claims against both Defendants. Because the elements and defenses of a battery claim against a law enforcement officer under Florida law are the same as those of an excessive force claim under the Fourth Amendment, the parties agreed that only an instruction for excessive force would be given to the jury. However, to preserve the state law claims of battery in the event the jury were to find that Deputy Bures had used excessive force, the parties also agreed that the jury would be asked to determine whether Bures had acted in bad faith or with malicious purpose or in a manner exhibiting the wanton and willful disregard of human rights, safety or property.

Although the Court had (at the summary judgment stage) rejected Deputy Bures' argument that he was entitled to qualified immunity on the Fourth Amendment excessive force claim, he was not precluded from again raising the defense at trial. See Cottrell v. Caldwell, 85 F.3d 1480, 1488 (11th Cir.1996) ("When a district court has

denied the qualified immunity defense prior to trial based upon its determination that the defense turns upon a genuine issue of material fact, the court should revisit that factual issue when, and if, the defendant files a timely Fed. R. Civ. P. 50(a) or (b) motion."); Ansley v. Heinrich, 925 F.2d 1339, 1348 (11th Cir.1991) (holding that "once the defense of qualified immunity has been denied pretrial due to disputed issues of material facts, the jury should determine the factual issues without any mention of qualified immunity"). Because Deputy Bures' did assert the qualified immunity defense at trial, the jury was asked to answer special interrogatories to aid the Court in determining the issue.[3] See Stone v. Peacock, 968 F.2d 1163, 1166 (11th Cir.1992) (stating that "[t]he law is now clear, however, that the defense of qualified immunity should be decided by the court, and should not be submitted for decision by the jury").

---

[3] "Qualified immunity is a legal issue to be decided by the court, and the jury interrogatories should not even mention the term. Instead, the jury interrogatories should be restricted to the who-what-when-where-why type of historical fact issues." Cottrell, 85 F.3d at 1488 (internal citations omitted); see also, Willingham v. Loughnan, 261 F.3d 1178, 1184 n.9 (11th Cir.2001) ("[W]hen the question of qualified immunity turns on specific questions of fact, the use of special interrogatories can be very helpful to a judge in determining the legal question of whether qualified immunity applies"). In the instant case, the jury was asked whether they found by the preponderance of the evidence the following:

1. That Defendant Deputy Bures gave the canine warning?

2. That Deputy Bures ordered Plaintiff Dasilva to the ground?

3. That Plaintiff Dasilva continued to approach Deputy Bures until he was in the range of the canine bite?

4. That Plaintiff Dasilva stopped after he came off the porch and remained still?

5. That Deputy Bures released the leash before the canine made the initial contact with Plaintiff Dasilva?

Special Interrogatories to the Jury 1-5 (DE 57).

The jury returned a general verdict in favor of BSO and Deputy Bures. In response to the special interrogatories, the jury found the following: Deputy Bures gave a canine warning; Bures ordered DaSilva to the ground; DaSilva continued to approach Bures until he was in range of the canine's bite; DaSilva did not stop after stepping off the porch and did not remain still; and Bures did not release the canine's leash before the canine made initial contact with DaSilva. Based on the jury's findings, Deputy Bures moved for dismissal of the claims on the ground of qualified immunity.

## DISCUSSION

The Court must now apply the law on qualified immunity to the factual findings made by the jury. Qualified immunity "protects municipal officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established rights of which a reasonable person would have known.'" Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow governmental officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citations and quotations omitted); see also Hardin v. Hayes, 957 F.2d 845, 849 n.7 (11th Cir. 1992) ("The doctrine balances society's interest in providing a remedy for injured victims and discouraging unlawful conduct with that of enabling public officials to act independently and without fear of consequences.").

To be entitled to qualified immunity, "the public official [first] must show that he was acting within the scope of his discretionary authority at the time the allegedly

5

wrongful acts occurred." Durruthy v. Pastor, 351 F.3d 1080, 1087 (11th Cir.2003) (citing Lee, 284 F.3d at 1194). Here, it is undisputed that Deputy Bures was acting within his discretionary authority. The burden, therefore, shifts to DaSilva "to show that qualified immunity does not apply." Lewis, 561 F.3d at 1291.

The Supreme Court has set forth a two-part inquiry to determine whether qualified immunity applies: (1) whether the facts support a constitutional violation, and (2) if so, whether that right was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds, Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808 (2009).[4] If either no constitutional violation occurred or the law was not clearly established, the officer is entitled to qualified immunity. Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.") Lewis, 561 F.3d 1291 ("[I]f the violated right was not clearly established, qualified immunity still applies.").

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of arrest." Lee, 284 F.3d at 1197. Claims of excessive force are evaluated under the Fourth Amendment's standard of objective reasonableness. Graham v. Conner, 490 U.S. 386, 395 (1989). A court, therefore, must consider whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them,

---

[4] Under Saucier, a court was required to analyze these two requirements in strict sequential order. In Pearson, the Supreme Court held that lower courts have the discretion to decide which of the two prongs to consider first. Pearson,129 S. Ct. at 818. This Court will analyze the constitutional issue first and then, if necessary, address whether the law was clearly established.

without regard to the officers' underlying intent or motivation. Lee, 284 F.3d at 1198 n.7. Whether the amount of force used by a police officer was proper turns on "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." Id. at 1197. Accordingly, "[u]se of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting Graham, 490 U.S. at 396). And the court must be mindful that "police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

The Supreme Court has held that a determination of whether a police officer used reasonable force "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the governmental interests at stake." Graham, 490 U.S. at 396 (internal quotations omitted). Moreover, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. But "[t]he force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." Lee, 284 F.3d at 1198 (setting forth the Graham factors). "In addressing these three factors, the Court should consider the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted."

Pace v. City of Palmetto, 489 F. Supp. 2d 1325, 1331 (M.D. Fla. 2007) (citing Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002)).

The first Graham factor – the severity of the crime – weighs in Deputy Bures' favor.  It was reasonable for Deputy Bures to believe that DaSilva may have committed the serious crime of rape.  At the time he encountered DaSilva – one block from the crime scene – he had been advised that the rapist was armed and that he was a black male wearing only dark shorts.  And the aviation unit had advised Bures that a subject matching the description of the suspect had been located; he was in a backyard, but moving toward the front of the house.  The aviation unit then directed Bures to that location, where he observed DaSilva, a black male wearing only shorts, sitting on a front porch.

Taking the facts as found by the jury, the second and third Graham factors – the danger to the officer and the risk of flight – also weigh in Deputy Bures' favor. According to the jury's findings, Bures gave a canine warning and ordered DaSilva to the ground. DaSilva, however, failed to follow Deputy Bures' commands; instead, DaSilva continued advancing until he was within range of the canine's bite.  The jury further found that Deputy Bures did not release the canine prior to the bite.  When faced with the same circumstances as Deputy Bures, a reasonable officer could have concluded that DaSilva posed both a potential risk to the safety of the deputies and the public and a potential risk of flight; the suspect sought was believed to be armed, and DaSilva's advancement, despite being ordered to the ground, raised a reasonable belief that he might attempt to flee.  Accordingly, the Court finds that Deputy Bures did not violate

DaSilva's Fourth Amendment right to be free from excessive force, and thus he is entitled to qualified immunity.[5]

## ORDER

Based on the foregoing, it is hereby ORDERED that Defendant Deputy Sheriff Scott Bures' Motion to Dismiss, made in open court following the jury's verdict, is GRANTED and the excessive force portion of DaSilva's Fourth Amendment claim against Bures in his individual capacity (Count II) is DISMISSED WITH PREJUDICE.

DONE AND ORDERED in Fort Lauderdale, Florida this 24th day of February 2010.

*Barry Seltzer*
BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record

---

[5] Having found that no constitutional violation occurred, the Court need not address whether a constitutional right was clearly established at the time of the subject incident. See Saucier, 533 U.S. at 201.